IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| PAUL E. BEAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08-0978-CV-W-ODS |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

ORDER AND OPINION AFFIRMING COMMISSIONER'S
FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his applications for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff is a 57-year-old illiterate male who–despite his illiteracy–achieved an 11th grade education. Plaintiff has worked as a battery changer, janitor, equipment operator, and construction laborer. In December 2004, while sanding drywall, Plaintiff became unable to catch his breath. Plaintiff went to an emergency room where he received Albuterol[1] treatments to help him breathe. R. at 140. Plaintiff was advised to quit construction work due to the sawdust and other substances in the air. This was the last employment Plaintiff held.

---

[1] Albuterol is a bronchodilator used to treat lung diseases. It works by relaxing and opening air passages to the lungs to make breathing easier. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682145.html (last visited on November 24, 2009).

Later in December 2004, Plaintiff returned for a follow-up on his shortness of breath, which had improved since the emergency room visit, but still remained. At that time, Plaintiff reported to his doctor that he smoked tobacco and crack cocaine, although he reportedly had reduced his tobacco intake to a few cigarettes per day. A CT scan was conducted which produced findings "consistent" with chronic obstructive pulmonary disease (COPD). R. at 167.

Plaintiff underwent a pulmonary function study in February 2005. The study confirmed the presence of a severe airway obstruction, with a pre-bronchodilator FEV1 reading of 1.29. However, Plaintiff's post-bronchodilator FEV1 reading increased to 1.67, which indicated a "reversible component." R. at 164-65. Plaintiff was prescribed Spiriva[2] and Albuterol for his COPD.

Plaintiff subsequently filed his applications for disability and supplemental security income benefits, alleging he was disabled due to COPD, cellulitis[3] in his feet, and decreased vision and hearing. Plaintiff completed a disability questionnaire in which he reported that he was unable to do any household chores and was addicted to crack cocaine. Nevertheless, Plaintiff reportedly was able to bathe, dress, and groom himself, watch television, and pursue other interest requiring minimal exertion (*e.g.*, playing dominoes and visiting with friends).

After filing his applications, Plaintiff attended an appointment in March 2005 for a refill of his Albuterol. Plaintiff reported that he was experiencing shortness of breath with exertion. R. at 220. At his next appointment in July 2005, Plaintiff reported that he was down to smoking half a pack of cigarettes per day, with occasional alcohol, cocaine and marijuana use. Plaintiff complained that he experienced chest pain two-to-three times per week accompanied by shortness of breath and that he needed to use his

---

[2] Like Albuterol, Spiriva is a bronchodilator used to treat COPD. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a604018.html (last visited on November 24, 2009).

[3] Cellulitis is a bacterial infection of the deepest layer of the skin. http://vsearch.nlm.nih.gov/vivisimo/cgi-bin/query-meta?v%3Aproject=medlineplus&query=cellulitis (last visited on November 24, 2009).

Albuterol 3 to 4 times per day. Nevertheless, Plaintiff reported that his breathing had improved and that he was "feel[ing] better overall." R. at 212.

Plaintiff's next visit relating to his claimed disabilities was in November 2005, when Plaintiff obtained treatment for a toe infection which appears to have been related to Plaintiff's cellulitis. According to the medical records from this visit, Plaintiff's toe infection was being resolved with antibiotics and other medication. In listing Plaintiff's health issues, the doctor who treated Plaintiff noted that his COPD was "stable." R. at 202.

Plaintiff was without his Albuterol for several days in May 2006 and experienced increased shortness of breath with a cough and chest pain. Plaintiff visited the doctor and obtained a refill of his prescriptions. R. at 198-00. By October 2006, Plaintiff's tobacco use had decreased to 1 cigar per day and he reported that he was no longer using drugs. According to the examining doctor, Plaintiff's COPD "appear[ed] stable." R. at 262-63.

In responding to an inquiry by Plaintiff's counsel, Dennis R. Pyszczynksi, M.D., F.C.C.P., a Pulmonary Subspecialist who treated Plaintiff on several occasions, confirmed that Plaintiff suffered from COPD. According to Dr. Pyszczynksi, Plaintiff's condition required that he avoid extremes in temperatures and humidity, as well as dusty or dirty environments. However, Dr. Pyszczynksi would not comment on Plaintiff's capacity to lift objects or do other tasks and did not mention any exertional work restrictions.

Plaintiff's disability applications were denied and he requested a hearing, which was held January 29, 2007. Plaintiff testified that he continued to use tobacco and was now up to smoking 2 cigars per day, but Plaintiff claimed he had discontinued his cocaine and marijuana use about 2 years prior to the hearing. According to Plaintiff, he would have bad days with his COPD about twice per week where he would only be able to lift 5 to 10 pounds, could only walk approximately 10 feet, and would lay in bed all day. Otherwise, Plaintiff claimed he was able to stand for 20 to 30 minutes, walk about 1 block, and lift 25 pounds. Plaintiff also stated he could drive, although sometimes he was required to pull over to catch his breath. As for Plaintiff's cellulitis, Plaintiff testified

that he was last treated by a doctor for this condition in 2002 or 2003 and that he currently used over-the-counter medications to obtain relief. Plaintiff offered no evidence regarding his alleged decreased hearing and vision as a basis for disability.

The ALJ issued his decision in which he found that Plaintiff had not performed substantial gainful activity since January 2005; that Plaintiff suffered from severe impairments, including COPD, cellulitis, and history of substance abuse; and that Plaintiff's COPD did not meet or equal an impairment listed in the regulations.[4] The ALJ further found that Plaintiff was unable to perform his past relevant work as a battery changer, janitor, heavy equipment operator, and construction laborer, but that he retained the residual functional capacity to perform unskilled light work affording a sit/stand option. In assessing Plaintiff's physical limitations, the ALJ concluded that Plaintiff's subjective assessment of his impairments was not credible in light of Plaintiff's description of his daily activities, his sporadic medical treatment, and fluctuating work history. After considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ concluded that Plaintiff could perform work as a inserting machine operator, folding machine operator, and collater operator, jobs which existed in the national economy. This finding was based on the testimony of a vocational expert who responded to a hypothetical question posed by the ALJ. Since Plaintiff possessed the ability to perform jobs in the national economy, a finding of disability was precluded.

## II. DISCUSSION

"[R]eview of [the Commissioner's] decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714

---

[4] Plaintiff apparently had not argued that his cellulitis or substance abuse met the criteria for a listed impairment.

(8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. *Forsythe v. Sullivan*, 926 F.2d 774, 775 (8th Cir. 1991). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Smith v. Schweiker*, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

Plaintiff's first argument[5] is that he qualified for the impairment listing found at 20 C.F.R. pt 404, subpt P, app. 1, § 3.02A. However, the regulations clearly direct that the highest FEV1 reading should be applied when determining whether a claimant satisfies the criteria under § 3.02A. 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.00E. During Plaintiff's February 2005 pulmonary function study, Plaintiff's highest FEV1 reading was 1.67. Since this reading is too high to qualify under § 3.02A, Plaintiff's argument fails.

Plaintiff bases his next argument on 20 C.F.R. § 404.1535, which applies when a claimant is (1) found to be disabled, and (2) there is evidence of drug addiction or alcoholism. When these two conditions are satisfied, a determination must be made whether the drug addiction or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(a)-(b). If so, the claimant is precluded from receiving disability benefits. 42 U.S.C. § 423(d)(2)(C). According to Plaintiff, the ALJ based its denial of benefits on his history of substance abuse but neglected to follow 20 C.F.R. § 404.1535. However, the ALJ was not required to follow 20 C.F.R. § 404.1535 because the ALJ *never found that Plaintiff was disabled*. Rather, in finding that Plaintiff was *not* disabled, the ALJ noted that Plaintiff's COPD markedly improved after Plaintiff used his prescribed bronchodilators, abstained from illegal drugs, and reduced his tobacco smoking. The mere fact that the ALJ mentioned illegal drugs in finding Plaintiff not disabled does not make 20 C.F.R. § 404.1535 applicable. Plaintiff has not shown error.

Plaintiff also contends the ALJ failed to properly evaluate his credibility. The

---

[5] All of Plaintiff's arguments in this proceeding relate to his claim that he is disabled due to COPD.

5

familiar standard for analyzing a claimant's subjective complaints is set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

Plaintiff's subjective assessment of his functional capacities was that–at best–he could stand for no more than 20 to 30 minutes at a time, lift up to 25 pounds, and walk no more than 1 block. In discounting Plaintiff's testimony regarding his functional capacity, the ALJ found that Plaintiff's reported daily activities were "inconsistent with subjective symptoms precluding all types of work." In making this determination, the ALJ acknowledged that a claimant need not be bedridden to receive disability benefits. The ALJ also acknowledged that Plaintiff's ex-wife handled all the household chores and cooking. Nevertheless, the ALJ found that Plaintiff was able to care for his personal needs, play dominoes, play the lottery, visit with friends, go shopping, and attend

6

church. The ALJ also found that Plaintiff was able to drive an automobile and that Plaintiff drove to stores for shopping; however, nowhere did Plaintiff state that he drove to stores to go shopping. In fact, Plaintiff testified that he had problems driving and that a lot of times he had to pull over and catch his breath. Thus, the only daily activities considered by the ALJ that are supported by the record are Plaintiff's ability to care for himself, go shopping, and engage in personal interests. Contrary to the ALJ's reasoning, these activities do not undermine Plaintiff's credibility regarding his inability to work. *See Harris v. Secretary of Dept. of Health and Human Services*, 959 F.2d 723, 726 (8th Cir. 1992) ("The fact that a claimant . . . cooks, cleans, shops, does laundry, and visits friends does not in and of itself constitute substantial evidence that a claimant possesses the residual functional capacity to engage in substantial gainful activity.")

Nevertheless, Plaintiff's testimony that he is disabled may also be discredited by evidence that the claimant has received minimum medical treatment. *See Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998). After Plaintiff's emergency room visit in December 2004, Plaintiff engaged in a pulmonary function study in February 2005 and occasionally saw doctors until July 2005, when medical records reveal Plaintiff's breathing had improved with the use bronchodilators. Plaintiff apparently did not see a doctor again for his COPD until May 2006–approximately 10 months later–when Plaintiff reported that he had been out of his Albuterol for several days and complained of increased shortness of breath and chest pain. Plaintiff's Albuterol prescription was refilled, and when Plaintiff visited a doctor again in October 2006, Plaintiff's COPD "appear[ed] stable." The Court concludes that the ALJ's description of Plaintiff's medical treatment for COPD as "sporadic" is supported by substantial competent evidence, and the ALJ properly considered this evidence to be inconsistent with Plaintiff's testimony regarding the severity of his breathing problems.

Moreover, the ALJ also relied on Plaintiff's work history in discounting Plaintiff's testimony regarding his disability. The ALJ described Plaintiff's work history as "inconsistent" and "fluctuating," which suggested to the ALJ that Plaintiff "has been out of the work force at times for reasons other than disability, thus, reflecting a poor motivation to work on his part." This finding is supported by substantial competent

7

evidence. Although Plaintiff testified that he last worked in 2005, Plaintiff's work record showed no reported income from 2001 to 2005. In 2000, Plaintiff earned $17,790.30; however, in 1999 Plaintiff only earned $11,211.99, and in 1998 Plaintiff's total earnings were only $6,930.48. Similar fluctuations are evidence throughout the remainder of Plaintiff's work history. In sum, the ALJ rightfully considered Plaintiff's inconsistent work history in making its credibility determination.

Finally, the only medical opinion regarding the extent of Plaintiff's COPD disability was that of Dr. Pyszczynski, who was unable to comment on Plaintiff's exertional capacity. With respect to Plaintiff's work restrictions, Dr. Pyszczynski could only state that Plaintiff "needs to avoid extremes in temperature and humidity and any dusty or dirty environments." In sum, the Court holds that the ALJ's credibility determination is supported by substantial evidence in the record.

Plaintiff last argues the ALJ erred in concluding that Plaintiff could engage in substantial gainful employment. The ALJ determined that Plaintiff could not perform his past medium to heavy work. The burden was on the Commissioner to show that there are other jobs in the economy that Plaintiff can perform. *Snead v. Barnhart*, 360 F.3d 834, 836 (8th Cir. 2004). The hypothetical question posed to a vocational expert must include all the claimant's impairments supported by substantial evidence in the record as a whole. *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005).

Plaintiff argues that the ALJ's hypothetical question failed to include that Plaintiff would miss approximately one workday per week due to illness and that Plaintiff would be required to lay down frequently throughout the day due to fatigue, which would preclude all work. However, these were impairment testified to by Plaintiff, and the Court has already held that the ALJ properly discounted Plaintiff's credibility. Thus, Plaintiff has not shown any error in the ALJ's determination that Plaintiff could engage in substantial gainful employment.

III.  CONCLUSION

The record contains substantial competent evidence supporting the ALJ's

determination that Plaintiff was not disabled.  Accordingly, the Commissioner's denial of benefits is affirmed.

IT IS SO ORDERED.

                                              /s/ Ortrie D. Smith
                                              ORTRIE D. SMITH, JUDGE
DATE: November 24, 2009           UNITED STATES DISTRICT COURT